**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN and CHARLES H. NOSKI,<br><br>                        Defendants. | Civil Action No. 11 cv 0733 (WHP)<br><br>ECF Case |

| | |
|---|---|
| DAVID P. SMITH, APLC, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, KENNETH D. LEWIS, NEIL A. COTTY, JOE L. PRICE and CRAIG ROSATO,<br><br>                        Defendants. | Civil Action No. 11 cv 1280 (WHP)<br><br>ECF Case |

**(Additional Captions Listed on Next Page)**

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE INSTITUTIONAL INVESTOR GROUP'S MOTION**
**FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,**
**<u>AND FOR APPROVAL OF SELECTION OF CO-LEAD COUNSEL</u>**

| | |
|---|---|
| PATRICIA GROSSBERG LIVING TRUST, individually and on behalf of all other similarly situated stockholders,<br><br>     Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, CHARLES H. NOSKI, KENNETH D. LEWIS, JOSEPH L. PRICE and COUNTRYWIDE FINANCIAL CORPORATION,<br><br>     Defendants. | Civil Action No. 11 cv 1982 (AKH)<br><br>ECF Case |

| | |
|---|---|
| ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, CHARLES H. NOSKI, KENNETH D. LEWIS, and JOSEPH L. PRICE,<br><br>     Defendants. | Civil Action No. 11 cv 2216<br><br>ECF Case |

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 4

      A.  Background ............................................................................................. 4

      B.  Defendants' Fraudulent Scheme ........................................................... 4

ARGUMENT .................................................................................................................... 5

   I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED ............................... 5

  II.  THE INSTITUTIONAL INVESTOR GROUP SHOULD BE
       APPOINTED LEAD PLAINTIFF ......................................................................... 5

      A.  The Institutional Investor Group Has The Largest Financial
          Interest In The Relief Sought ................................................................ 6

      B.  The PSLRA Favors the Appointment of Institutional Investors
          such as the Members of the Institutional Investor Group ...................... 8

      C.  The Members of the Institutional Investor Group Are Qualified
          Under Rule 23 of the Federal Rules ...................................................... 10

          1.  The Institutional Investor Group's Claims Are Typical Of
              The Class's Claims ................................................................... 10

          2.  The Institutional Investor Group Will Fairly And Adequately
              Represent The Interests Of The Class ...................................... 12

          3.  The Court Should Approve the Institutional Investor Group's
              Choice Of Co-Lead Counsel ..................................................... 13

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Albert Fadem Trust v. Citigroup Inc.*,
    239 F. Supp. 2d 344 (S.D.N.Y. 2002)......................................................................9

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................11

*Ferrari v. Impath, Inc.*,
    No. 03 Civ. 5667 (DAB), 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ............3, 12

*Glauser v. EVCI Center Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................8

*Hicks v. Morgan Stanley & Co.*,
    No. 01-CIV-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ..............10

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    No. 03 MD 1529 (LMM), 2005 WL 2126157 (S.D.N.Y. Sept. 1, 2005) ..................8

*In re BP, PLC Sec. Litig.*,
    No. 10 md 2185, 2010 WL 5343465 (S.D. Tex. Dec. 28, 2010)................................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..................................................................................13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).....................................................................................12

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............6

*In re Countrywide Financial Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) .....................................................................................14

*In re Crayfish Co. Sec. Litig.*,
    No. 00-cv-6766, 2002 WL 1268013 (S.D.N.Y. June 6, 2002) ..................................9

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156, 157 (S.D.N.Y. 1997) ......................................................................7

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp.2d 398 (S.D.N.Y. 2006)........................................................................6

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95, 102 (S.D.N.Y. 2005) ...........................................................................9

*In re Global Crossing, Ltd. Securities & "ERISA" Litigation*,
  02 Civ. 910 (S.D.N.Y.) .............................................................................................13

*In re McDermott Int'l, Inc. Sec. Litig.*,
  No. 08 Civ. 9943 (DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ........................6

*In re Olsten Corp. Sec. Litig.*,
  181 F.R.D. 218 (E.D.N.Y. 1998) ............................................................................7, 9

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999) ......................................................................................7

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................14

*Juliar v. Sunopta, Inc.*,
  No. 08 Civ. 933 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..................6, 9

*Johnson v. Celotex Corp.*,
  899 F.2d 1281, 1284 (2d Cir. 1990) ..........................................................................5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................9

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) .................6, 10

*Skwortz v. Crayfish Co., Ltd.*,
  No. 00-cv-6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ....................7

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ................................................................................8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ................................................................................9

*Xianglin Shi v. Sina Corp.*,
  No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)....................12

**STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..........................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii) .........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................2, 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................9, 11

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................13

Fed. R. Civ. P. 23 .............................................................................................. *passim*

Fed. R. Civ. P. 42(a) .............................................................................................4, 5

**OTHER AUTHORITIES**

1 H. Newberg, *Newberg on Class Actions* § 3.13 (4th ed. 2007) ..................................................10

Conference Report on Sec. Litig. Reform, H.R. Rep. No. 104-369 .........................................2, 13

Sjunde AP-Fonden ("AP7"), Arkansas Teacher Retirement System ("Arkansas Teacher") and KBC Asset Management NV ("KBC") (collectively, the "Institutional Investor Group"), through their undersigned counsel, in connection with securities fraud class action lawsuits filed against Bank of America Corporation ("Bank of America" or the "Company") and related defendants,[1] respectfully submit this memorandum of law in support of their motion: (1) to consolidate the above-captioned related securities fraud class actions (collectively, the "Action");[2] (2) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) for approval of their selection of the law firms of Grant & Eisenhofer P.A. ("Grant & Eisenhofer") and Labaton Sucharow LLP ("Labaton Sucharow") as Co-Lead Counsel for the Class.

---

[1] Pending before the Court are securities fraud class actions brought against: (1) Bank of America, the holding company of the United States largest bank, which is used by one in two U.S. households; (2) Brian T. Moynihan, Bank of America's President and Chief Executive Officer ("CEO") since January 2010; (3) Charles H. Noski, Bank of America's Chief Financial Officer ("CFO") since May 2010; (4) Kenneth D. Lewis Bank of America's Chairman and CEO from February 2005 though April 2009, and Bank of America's President and CEO from April 2009 through December 2009; (5) Joseph L. Price, Bank of America's CFO from January 2007 to January 2010; and (6) Countrywide Financial Corporation (collectively, "Defendants").

[2] The related actions are: *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 11 Civ. 0733 (WHP), *David P. Smith, APLC v. Bank of America Corp.*, 11 Civ. 1280 (WHP), *Patricia Grossberg Living Trust v. Bank of America Corp.*, 11 Civ. 1982 (AKH), and *Anchorage Police & Fire Retirement System v. Banc of America Corp.*, 11 Civ. 2216 (collectively, the "Related Actions"). No motion for consolidation has previously been made. The *Smith* action was voluntarily dismissed without prejudice on February 28, 2011. The *Pipefitters Local No. 636* complaint alleges a class period between January 20, 2010 and October 19, 2010, inclusive. An amended complaint in the *Patricia Grossberg Living Trust* action was filed on March 25, 2011. The *Patricia Grossberg Living Trust* amended complaint alleges a class period between July 23, 2009 and October 19, 2010, inclusive. The *Anchorage Police & Fire* complaint alleges a class period between July 23, 2009 and October 19, 2010, inclusive. For purposes of this motion, all loss calculations are based on the longest class period – July 23, 2009 and October 19, 2010, inclusive (the "Class Period"). *See infra* at 6-7 (citing authorities supporting use of longest class period).

## PRELIMINARY STATEMENT

The relief sought by the Institutional Investor Group with this motion is precisely the result the PSLRA's framers hoped to accomplish by enacting the PSLRA's lead plaintiff provision – for complex class actions arising under the federal securities laws to be prosecuted by large institutional plaintiffs.  As Congress noted in the Statement of Managers, the PSLRA was intended to "increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. Conference Report on Sec. Litig. Reform, H.R. Rep. No. 104-369, at *34, reprinted in 1995 U.S.C.C.A.N. 730,733 (1995).  The members of the Institutional Investor Group, with billions of dollars in assets under management, are exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in securities class action suits.

Pursuant to the PSLRA, the Court must appoint the "the member or members" of the class that are the "most adequate" to serve as Lead Plaintiff in the Action.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In so doing, the Court must consider which movant has the "largest financial interest" in the relief sought by the Class, and whether there has been a *prima facie* showing that the movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The members of the Institutional Investor Group respectfully submit that they are the "most adequate plaintiff," as defined by the PSLRA, because they have the largest financial interest in the relief sought in the Action and otherwise satisfy the requirements of Rule 23 of the Federal Rules.  As a result of Defendants' misconduct, the members of the Institutional Investor

Group suffered combined losses of $20,233,403 on a last-in, first-out ("LIFO") basis.[3]  By virtue of their substantial investment and losses in Bank of America stock during the Class Period, the members of the Institutional Investor Group believe that they have the largest financial interest in the relief sought in the Action.  The members of the Institutional Investor Group also satisfy the adequacy and typicality requirements of Rule 23 of the Federal Rules, and fully understand the duties and responsibilities of a Court-appointed Lead Plaintiff under the PSLRA.  Accordingly, the members of the Institutional Investor Group are presumptively the "most adequate plaintiff" as defined by the PSLRA and should be appointed as Lead Plaintiff on behalf of the Class.

Moreover, the Institutional Investor Group is composed of sophisticated institutional investors experienced in conducting and supervising counsel in complex securities litigation, and is therefore the paradigmatic lead plaintiff envisioned by the PSLRA.  *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in litigation and in the selection of plaintiff's counsel).  Lastly, the Institutional Investor Group selected Grant & Eisenhofer and Labaton Sucharow, highly qualified law firms with substantial experience in prosecuting securities class actions, to serve as Co-Lead Counsel for the Class.

Accordingly, and for the reasons set forth in detail below, the Related Actions should be

---

[3]    The Institutional Investor Group suffered combined losses of $24,641,757 on a first-in, first-out ("FIFO") basis.  AP7 suffered losses of approximately $14,598,550 on a LIFO basis and $14,811,216 on a FIFO basis.  Arkansas Teacher suffered losses of approximately $1,623,346 on a LIFO basis and $3,607,140 on a FIFO basis.  KBC suffered losses of approximately $4,011,506 on a LIFO basis and $6,223,401 on a FIFO basis.  As required by the PSLRA, the members of the Institutional Investor Group herewith provide Certifications that, among other things, list their respective transactions in Bank of America common stock during the Class Period.  *See* Exhibit A of the accompanying Declaration of Geoffrey C. Jarvis dated April 4, 2011 (hereinafter "Jarvis Decl.").

consolidated, the Institutional Investor Group should be appointed Lead Plaintiff, and its selection of Grant & Eisenhofer and Labaton Sucharow as Co-Lead Counsel for the Class should be approved.

## STATEMENT OF FACTS

### A.  BACKGROUND

Bank of America is the holding company of the United States' largest bank, which is also one of the world's largest financial institutions.[4]  On July 1, 2008, Bank of America acquired Countrywide Financial Corporation in an all-stock transaction, significantly expanding the Company's mortgage origination and servicing capabilities.

### B.  DEFENDANTS' FRAUDULENT SCHEME

The four complaints that were filed against Bank of America in this Court assert claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Specifically, the Action alleges that during the Class Period, Defendants made false and misleading statements about the Company's exposure to risk, and particularly its liability with respect to nearly $1 trillion in residential mortgage-backed securities ("RMBS") that were issued during the housing boom from 2004 to 2007.  As news of the Company's risk exposure surfaced, Bank of America's stock price fell.  The Company's conduct and the revelations thereof have caused Bank of America stockholders to lose billions of dollars.

---

[4]     Bank of America is a Delaware corporation with headquarters in Charlotte, North Carolina. The Company's stock is listed on the New York Stock Exchange under the ticker symbol "BAC," and its stock is a component of the Dow Jones Industrial Average.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA requires the Court to consider a motion to consolidate prior to deciding a motion for appointment of lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211-12 (S.D.N.Y. 1992) (consolidation is appropriate in securities class action when complaints are based on substantially the same public statements, press releases and reports and there are common questions of law and fact). The Court has broad discretion under Rule 42(a) to consolidate cases pending within the District. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Courts recognize that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *See id.* at 1285.

Each of the Related Actions involves class action claims on behalf of Class members who purchased publicly-traded securities of Bank of America in reliance on materially false and misleading statements and omissions made during the relevant time period. Each action alleges claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, names Bank of America and certain of its directors and officers, and/or Countrywide, as defendants, and stems from the same underlying facts and circumstances. Accordingly, consolidation of the actions is appropriate under Rule 42(a) of the Federal Rules and the PSLRA.

### II. THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff because its members are the movants "most capable of adequately representing the

interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the securities laws and provides a presumption favoring the plaintiff or plaintiffs with the largest financial interest in the action. Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person *or group of persons* that…(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

The appointment of a group of class members as Co-Lead Plaintiffs is appropriate under the PSLRA, as courts in this District have recognized.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see, e.g.*, *In re Warner Chilcott Ltd. Sec. Litig.*, 06 Civ. 11515 (WHP), slip op. at 3 (S.D.N.Y. Mar. 21, 2007) (approving appointment of multiple lead plaintiffs); *Lillian Winston 1993 Trust v. RenaissanceRe Holdings Ltd.*, 05 Civ.06764 (WHP), slip op. at 4 (S.D.N.Y. Dec. 19, 2005.) (same); *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943 (DC), 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (Chin, J.) (holding that the "majority of courts, including those in this District . . . permit [] unrelated investors to join together as a group seeking lead-plaintiff status…if such a grouping would best serve the class."); *Juliar v. Sunopta, Inc.*, No. 08 Civ. 933, (PAC), 2009 WL 1955237, at *1 (S.D.N.Y. Jan. 30, 2009) (appointing pension fund group as lead plaintiff); *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of pension funds lead plaintiff).

## A.    THE INSTITUTIONAL INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT

The Institutional Investor Group believes it has the largest financial interest of any movant in this action and should therefore be appointed Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this District have a general preference for the LIFO loss calculation methodology. *See., e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (noting that "more recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.") (internal quotations omitted). In performing these calculations, it is appropriate to use the longest class period alleged in the various complaints filed. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp.2d 398, 402-03 (S.D.N.Y. 2006) ("I find that the use of the longer, most inclusive class period…is proper, as it encourages more potential class members…"); *see also In re BP, PLC Sec. Litig.*, No. 10 md 2185, 2010 WL 5343465, at *2-3 (S.D. Tex. Dec. 28, 2010) (finding it appropriate to use the longest class period unless the factual allegations supporting that period are "obviously frivolous"); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (relying on the longest class period alleged in the class actions filed against the defendants).

As a result of Bank of America's misconduct and the subsequent market correction of the price of the Company's common stock, the Institutional Investor Group sustained aggregate losses of $20,233,403 on a LIFO basis.[5] *See* Jarvis Decl. Ex. A.

In light of their large financial interest, the Institutional Investor Group is entitled to the statutory presumption that it is the most adequate plaintiff and it should be appointed Lead Plaintiff in this case.

---

[5]     As noted earlier, two of the complaints in the Action – the *Patricia Grossberg Living Trust* amended complaint and the *Anchorage Police & Fire* complaint allege a class period between July 23, 2009 and October 19, 2010, inclusive, while only one – the *Pipefitters Local No. 636* complaint – alleges the shorter class period between January 20, 2010 and October 19, 2010.   In accordance with the case law cited above, the Institutional Investor Group's losses were calculated using the longest class period in the complaints filed in the Action.

**B.      THE PSLRA FAVORS THE APPOINTMENT OF INSTITUTIONAL INVESTORS SUCH AS THE MEMBERS OF THE INSTITUTIONAL INVESTOR GROUP**

The PSLRA's lead plaintiff provision was intended to "ensure[ ] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers."  *Party City*, 189 F.R.D. at 104 (citing *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)); *Skwortz v. Crayfish Co., Ltd.*, No. 00-cv-6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs."); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA §21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

Consistent with Congress's intent, courts have frequently recognized that institutional investors are ideally suited to fill the lead plaintiff role.  *See, e.g.*, *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (movant's "role as an institutional investor with fiduciary responsibilities makes it particularly well suited" to serve as lead plaintiff); *Glauser v. EVCI Center Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (institutional investor not only had the largest financial interest, but also had in-house attorneys and securities litigation experience, and was "precisely the type of sophisticated institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529 (LMM), 2005 WL 2126157, at *2 (S.D.N.Y. Sept. 1, 2005) ("In keeping with…congressional intent,

courts consistently appoint pension and retirement funds as lead plaintiffs pursuant to the PSLRA.") (collecting cases).

AP7 is a Swedish manager of premium pension assets on behalf of Swedish savers with more than $9 billion in assets under management as of September 2010. Established in 1937 to provide retirement benefits to the thousands of current and former employees of the Arkansas education community, Arkansas Teacher had approximately $9.7 billion in assets as of June 30, 2009. KBC – an international asset management firm headquartered in Brussels – is a subsidiary of the KBC Group, which had assets under management of 158 billion euros at the end of 2009. Moreover, because Arkansas Teacher has served as a lead plaintiff in other securities actions, *see Arkansas Teacher Certification*, its experience will benefit the Class. For example, Arkansas Teacher successfully prosecuted *In re Williams Sec. Litig.*, 02-cv-72 (N.D. Okla.), in which Arkansas Teacher was specifically selected by the court to replace lead plaintiffs that had withdrawn for undisclosed reasons, resulting in a recovery of $311 million for the class. As set forth herein, AP7, Arkansas Teacher and KBC are exactly the type of institutional investor-lead plaintiffs envisioned by the Congress when it enacted the PSLRA. As such, the Institutional Investor Group should be appointed Lead Plaintiff in the Action.

### C. THE MEMBERS OF THE INSTITUTIONAL INVESTOR GROUP ARE QUALIFIED UNDER RULE 23 OF THE FEDERAL RULES

The Institutional Investor Group should also be appointed Lead Plaintiff because its members "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002); *Olsten*, 3 F. Supp. 2d at 294; *Juliar*, 2009 WL 1955237, at *1.

Of the four prerequisites to class certification, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citation omitted); *see also Juliar*, 2009 WL 1955237, at *1. Furthermore, "at this stage of litigation, only a preliminary showing of typicality and adequacy is required." *Kaplan*, 240 F.R.D. at 94 (*citing eSpeed*, 232 F.R.D. at 102).[6]  As detailed below, the Institutional Investor Group unquestionably satisfies these requirements.

### 1.    The Institutional Investor Group's Claims Are Typical of the Class's Claims

The Institutional Investor Group satisfies the typicality requirements of Rule 23 of the Federal Rules. Typicality can be established by showing that the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *See Hicks v. Morgan Stanley & Co.*, No. 01-CIV-10071 (HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted); *see also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class

---

[6]      The remaining requirements of Rule 23 of the Federal Rules relate to the adequacy of the claims themselves and should not enter into the Court's determination of who should serve as lead plaintiff, but rather should be deferred until the lead plaintiff moves for class certification. *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *Party City*, 189 F.R.D. at 106); *see also In re Crayfish Co. Sec. Litig.*, No. 00-cv-6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (holding that the remaining requirements are not properly considered by the Court until the lead plaintiff moves for class certification).

sought to be represented, the typicality requirement is usually met regardless of minor variations").

Here, the Institutional Investor Group's claims are typical of the claims of the members of the proposed Class, who also purchased or otherwise acquired Bank of America securities at artificially inflated prices during the Class Period and suffered damages after the subsequent market corrections.  In sum, the Institutional Investor Group satisfies the typicality requirement because, just like all other class members, they: (1) purchased or otherwise acquired Bank of America securities during the Class Period; (2) at prices allegedly inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth about the Company was subsequently disclosed.  *Reimer*, 2008 WL 2073931, at *4 (finding typicality satisfied where lead plaintiff movants purchased "stock during the proposed class period at prices that allegedly were artificially inflated due to [defendants'] alleged misrepresentations and allegedly suffered losses when the misrepresentations came to light and the stock value declined").

The Institutional Investor Group's claims arise from the same course of conduct as the claims of all other Class members:  Defendants' misrepresentations concerning the Company's exposure to risk caused the Institutional Investor Group, like other class members, to purchase Bank of America securities at artificially inflated prices.  Like other Class members, the Institutional Investor Group was harmed when the previously undisclosed and misrepresented information began to be revealed.  The members of the Institutional Investor Group are not subject to any unique or special defenses.  Accordingly, their claims are in all respects "typical" of the claims of other Class members.  The Institutional Investor Group and all Class members

therefore have identical, non-competing and non-conflicting interests in establishing Defendants' liability.

### 2. The Institutional Investor Group Will Fairly And Adequately Represent The Interests Of The Class

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the Class."  The PSLRA directs the Court to limit its inquiry regarding adequacy to: (1) whether there are any conflicts between the interests of the movants and the members of the class; (2) whether the movants are adequate representatives of the class; (3) whether the interests of the movants are aligned with the members of the class; and (4) whether there is evidence of any antagonism between the interests of the movants and the class. 15 U.S.C. § 78u 4(a)(3)(B)(iii)(I)(cc).   Adequate representation will be found if the representatives are represented by able and experienced counsel, and the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

As sophisticated institutional investors, the members of the Institutional Investor Group are not merely adequate, they are the paradigmatic investors that Congress wanted to prosecute securities class actions.  *See Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.'") (citation omitted); *Ferrari*, 2004 WL 1637053, at *3 (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in securities litigation and to exercise control over the selection and actions of plaintiff's counsel); *see also In re Cendant*

*Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff).

Having suffered a significant aggregate $20,233,403 loss on a LIFO basis as a result of the misconduct at Bank of America, the Institutional Investor Group has a significant financial interest in the litigation and can be counted on to vigorously pursue recovery for the Class from all culpable parties.   As such, the interests of the Institutional Investor Group are perfectly aligned with those of the Class, and there is no evidence of any antagonism between the Institutional Investor Group and the Class.     The Institutional Investor Group has further demonstrated its adequacy by retaining highly experienced counsel, timely seeking appointment as Lead Plaintiff,[7] and submitting Certifications reflecting their understandings of the obligations owed by lead plaintiffs to the Class.   *See* Jarvis Decl. Ex. A.   Thus, the Institutional Investor Group has the requisite experience and expertise to vigorously represent the Class in leading this action, and satisfies the adequacy requirement of Rule 23 of the Federal Rules.

### 3.   The Court Should Approve the Institutional Investor Group's Choice Of Co-Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).   Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class."   H.R. Conf. Rep. No. 104-369 (1995), at *35, reprinted in 1995 U.S.C.C.A.N. at 734; *see also In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to

---

[7] Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news reporting wire service, on February 2, 2011. *See* Notice, Jarvis Decl. Ex. D.

take away this prerogative from securities plaintiffs.  And, indeed, it did not.  While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

The Institutional Investor Group has retained highly-qualified counsel to serve as Co-Lead Counsel for the Class.  Grant & Eisenhofer has been lead counsel in several of the largest securities class actions in history, including *In re Tyco Int'l Ltd. Sec. Litig.*, MDL No. 02-1335-B, in which a $3.25 billion settlement was achieved on behalf of the class; and *In re Global Crossing, Ltd. Securities & "ERISA" Litigation*, 02 Civ. 910 (S.D.N.Y.), where settlements exceeded $448 million.  Most recently, Grant & Eisenhofer resolved securities litigation pending against Marsh & McLennan for $400 million.  Grant & Eisenhofer also has experience taking securities class actions to trial, having served as sole lead counsel in *In re Safety-Kleen Bondholders Litigation*, No. 00-CV-1145-17 (D.S.C.), which went to a jury trial and ended in judgments as a matter of law against two of the company's executives for nearly $200 million, and settlements with the remaining defendants shortly before closing arguments.  *See* Grant & Eisenhofer Firm Biography (Jarvis Decl. Ex. B).

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors.  In November 2010, Labaton Sucharow, as class counsel for a certified class of investors, secured a favorable jury verdict in a securities fraud suit brought against BankAtlantic and several of its officers.  *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-cv-61542, Trial Tr. at 4350:8-4364:10 (S.D. Fla. Nov. 18, 2010).  Labaton Sucharow is also lead counsel in *In re American Int'l Group, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion.  In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Sec. Litig.*, No. 07-cv-

14

5295 (C.D. Cal.), which resulted in a settlement of $624 million.  The *Countrywide* settlement is the largest securities fraud settlement arising from the financial crisis of 2007 to 2008.  Labaton Sucharow served as lead counsel in the *Waste Management* Sec. Litig., which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time.  *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions").  *See also* Labaton Sucharow Firm Biography (Jarvis Decl. Ex. C).  Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and other public companies.  In *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

Not only are Grant & Eisenhofer and Labaton Sucharow each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel.  The firms are presently serving as co-lead counsel in *In re Satyam Computer Services, Ltd. Sec. Litig.*, 09 MD 2027 (BSJ) (S.D.N.Y.), pending in this District.  The firms have also achieved successful resolutions of numerous shareholder suits in the Delaware Court of Chancery where they have served as co-lead counsel.

Accordingly, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer and Labaton Sucharow as Co-Lead Counsel for the Class.

## CONCLUSION

WHEREFORE, for all the aforementioned reasons, the Institutional Investor Group respectfully requests that the Court: (i) consolidate the above-captioned, related securities fraud class actions; (ii) appoint the Institutional Investor Group to serve as Lead Plaintiff for the Class in the Action; and (ii) approve the Institutional Investor Group's selection of Grant & Eisenhofer and Labaton Sucharow as Co-Lead Counsel for the Class.

Dated: April 4, 2011
      New York, New York

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By:  <u>s/ Geoffrey C. Jarvis</u>
      Jay W. Eisenhofer
      Geoffrey C. Jarvis
      485 Lexington Avenue, 29th Floor
      New York, New York 10017
      Tel: (646) 722-8500
      Fax: (646) 722-8501
      jeisenhofer@gelaw.com
      gjarvis@gelaw.com

      **LABATON SUCHAROW LLP**
      Christopher J. Keller
      Eric J. Belfi
      Michael W. Stocker
      Rachel A. Avan
      140 Broadway
      New York, New York 10005
      Telephone: (212) 907-0700
      Facsimile: (212) 818-0477
      ckeller@labaton.com
      mstocker@labaton.com
      ravan@labaton.com

**MOTLEY RICE LLC**
James M. Hughes
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Additional Counsel for the*
*Institutional Investor Group*

      *Counsel for the Institutional Investor Group*
      *and Proposed Co-Lead Counsel for the Class*